IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

STEPHEN SNUFFER,

        Plaintiff,

v.                                CIVIL ACTION NO.  5:14-cv-25899

GREAT LAKES EDUCATIONAL
LOAN SERVICES, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant Great Lakes Educational Loan Services, Inc.'s Motion to Dismiss* (Document 8), the *Memorandum in Support* (Document 9), and the *Notice of Decision/Supplemental Authority in Support of Defendant Great Lakes Educational Loan Services, Inc.'s Motion to Dismiss* (Document 15). In addition, the Court has reviewed the Plaintiff's *Complaint* (Document 1-3). The Plaintiff did not file a response to the motion to dismiss. For the reasons stated herein, the Court finds that the Defendant's motion should be granted in part and denied in part.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Stephen Snuffer alleges that his student loans are serviced by Great Lakes Educational Loan Services, Inc. (Great Lakes). He asserts that he applied to have his loans discharged after becoming disabled, and explained his inability to make payments to Great Lakes. However, he alleges that despite his requests not to be contacted, "Great Lakes continued to repeatedly call" him, even after he provided his attorney's contact information. (Compl., ¶¶ 7–9.)

He asserts the following causes of action: Count I – violations of the West Virginia Consumer Credit and Protection Act (WVCCPA); Count II – violation of the West Virginia Computer Crime and Abuse Act; Count III – violation of the Telephone Harassment Statute; Count IV – intentional infliction of emotional distress; and Count V – common law invasion of privacy.

Within Count I, he claims violations of specified sections of the WVCCPA, including: "attempting to collect a debt by threats or coercion;" "engaging in unreasonable or oppressive or abusive conduct toward the Plaintiff in connection with the attempt to collect a debt;" calling "repeatedly or continuously or at unusual times or at times known to be inconvenient, with the intent to annoy, abuse, or oppress the Plaintiff;" and "using unfair or conscionable means to collect a debt." (Complaint, ¶ 14.) Within Count II, he alleges that the Defendant "with the intent to harass" called "after being requested…to desist." (*Id.* at ¶ 18.) Within Count III, he alleges that the Defendant "made or caused to be made telephone calls to the Plaintiff causing the Plaintiff's telephone to ring repeatedly or continuous[ly] with the intent to harass the Plaintiff," again citing the relevant code section. (*Id.* at ¶ 23.)

Mr. Snuffer initiated this action in the Circuit Court of Raleigh County, West Virginia, on August 13, 2014. The Defendant removed it to federal court on September 17, 2014, asserting that it serviced Mr. Snuffer's federal student loans in its capacity as a federal contractor and that it had colorable federal defenses. Mr. Snuffer filed a motion to remand on October 16, 2014, which the Court denied. (*See* Document 16.) Great Lakes filed this motion to dismiss for failure to state a claim on October 17, 2014. Mr. Snuffer has not filed a response.

## *II.     STANDARD OF REVIEW*

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.  *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  Additionally, allegations "must be simple, concise, and direct." Fed.R.Civ.P. 8(d)(1).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements."  *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.  *Iqbal,* 556 U.S. at 679.  Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000).

3

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

### III. DISCUSSION

The Defendant moves for dismissal pursuant to Rule 12(b)(6) on the grounds of preemption, lack of a private right of action as to Counts II and III, and failure to satisfy basic pleading requirements.

*A. Preemption*

Great Lakes posits that the Higher Education Act (HEA) and corresponding regulations preempt the Plaintiff's state law claims. It begins by interpreting Mr. Snuffer's complaint as alleging only that it violated the WVCCPA by continuing to contact him directly after he had told it he had an attorney. It points out that the Department of Education (ED) has regulations

specifying due-diligence requirements for contacts with delinquent borrowers, including those seeking a discharge based on their disability.[1] ED has also instructed loan servicers that contacts must be made directly to the borrower, not to the borrower's attorney. Thus, Great Lakes contends, "Mr. Snuffer's claims are based entirely on Great Lakes' alleged unwillingness to comply with his request to forego activities that it is ***required*** to take pursuant to federal law." (Mem. in Supp. of Mot. to Dismiss at 11) (emphasis in original.)  Finally, Great Lakes asserts that Mr. Snuffer's common law claims rely on the same factual allegation that Great Lakes continued to contact him after he asked it not to.  Because it properly followed ED regulations rather than conflicting West Virginia law, Great Lakes reasons, the complaint must be dismissed.

Preemption arises from Article VI, clause 2, of the United States Constitution, which states that "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof…shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.  "From this Supremacy Clause flows the well-established principle that federal legislation, if enacted pursuant to Congress' constitutionally delegated authority, can nullify conflicting state or local actions. *Worm v. Am. Cyanamid Co.*, 970 F.2d 1301, 1304 (4th Cir. 1992).  The Fourth Circuit has succinctly summarized the types of preemption as follows: "(1) when Congress has clearly expressed an intention to do so ("express preemption"); (2) when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation ("field preemption"); and (3) when a state law conflicts with federal law ("conflict

---

1 Mr. Snuffer's student loans are direct loans from the federal government.  Great Lakes has contracted with ED to service his loans.

5

preemption")." *College Loan Corp. v. SLM Corp., a Delaware Corp.*, 396 F.3d 588, 595-96 (4th Cir. 2005) (involving a contractual dispute between two student loan servicing companies).

The court went on to find that conflict preemption is applicable to the HEA. *Id.* at 596. A conflict may be present (a) because the state law and the federal law are in direct conflict such that compliance with both would be impossible, or (b) because compliance with the state law would frustrate the purposes and objectives of the federal law. *Id.*

Other courts within West Virginia have considered the interaction between the HEA and ED regulations and guidance for servicers of student loans and the WVCCPA. The United States District Court for the Northern District of West Virginia adopted the reasoning of an opinion from the Ninth Circuit Court of Appeals to find that the sections of the WVCCPA involved in that case "impose additional burdens on the pre-litigation activities of third parties collecting on student loans" and were thus preempted by the HEA and accompanying regulations. *Seals v. Nat'l Student Loan Program*, 2004 WL 3314948, at *5-6 (N.D.W. Va. Aug. 16, 2004) *aff'd*, 124 F. App'x 182 (4th Cir. 2005) (listing sections including W. Va. Code Ann. §§ 46A-2-124, 46A-2-125, and 46A-2-127). The Circuit Court for Raleigh County, West Virginia, similarly found that the HEA and accompanying regulations preempted the WVCCPA and common law claims related to pre-litigation collection of student loan debt. *Jack v. Penn. Higher Ed. Assist. Agency, Inc.*, Civ. A. No. 08-C-1143-H, "Order Granting Mot. for Summ. J. in Favor of Def. Pennsylvania Higher Education Assistance Agency, Inc. (Jan. 8, 2010) (att'd as Ex. C to Def.'s Mot. to Dismiss, Document 8-3).

However, then Chief Judge Haden of the United States District Court for the Southern District of West Virginia concluded that the HEA and related regulations preempted the

6

WVCCPA only to the extent the provisions were actually in conflict. *McComas v. Fin. Collection Agencies, Inc.*, 1997 WL 118417, at *2-3 (S.D.W. Va. Mar. 7, 1997) (Haden, C.J.). Citing WVCCPA rules barring deceptive or fraudulent debt collection practices as an example, Judge Haden explained that "[t]here is no cross purpose in requiring due diligence in collection, while also requiring non-fraudulent, non-deceptive or non-misleading representations of the putative collector." *Id.* Judge Johnston considered the same issue, thoroughly reviewed the case law, and determined that the collection efforts in that case were permissible under the regulations, creating an actual conflict. *Martin v. Sallie Mae, Inc.*, 2007 WL 4305607, at *9 (S.D.W. Va. Dec. 7, 2007) (not reaching the question of whether the WVCCPA was fully preempted in the context of student loans regulated by the HEA).

The Court finds Judge Haden's reasoning persuasive. Though portions of the WVCCPA conflict with ED regulations and are preempted, provisions barring threatening or fraudulent debt collection practices cannot be said to place a "burden" on pre-litigation debt collection activities or to conflict with the objectives of the HEA. The Fourth Circuit has explained that preemption should be found only where an actual conflict is present. It emphasized the importance of that rule when the federal law in question provides no private right of action. *College Loan Corp.*, 396 F.3d at 597. Though the WVCCPA does limit the activities of third parties collecting on student loans, the Court does not find that all such limits conflict with either the actual language of the HEA and accompanying regulations or with the purposes and objectives of the HEA. Thus, the Court finds that the WVCCPA is preempted only where conflicting statutory language, regulations, or HEA objectives exist.

As explained more fully below, the Court further finds that not all of the Plaintiff's claims are preempted. In addition to the preempted claims regarding direct contact after Great Lakes was informed that he had retained counsel, Mr. Snuffer alleges that Great Lakes used threats or coercion; engaged in unreasonable, oppressive, or abusive conduct; caused his phone to ring or engaged him in telephone conversations repeatedly, continuously, or at unusual or inconvenient times; and used unfair or unconscionable means to collect a debt. It is possible that more detailed facts will reveal that Great Lakes made only the required attempts to collect on Mr. Snuffer's student loans in compliance with ED regulations, and violated the WVCCPA only to the extent it would restrict such required activity. However, at this stage, the Plaintiff has pled violations of the WVCCPA that are not in conflict with any ED regulation or guidance identified by the Defendant. As such, the Court cannot now find that the Plaintiff's complaint is fully preempted by the HEA and accompanying regulations. Thus, Great Lakes' motion to dismiss based on preemption must be denied.

### B. Counts II and III – Private Right of Action

Great Lakes next contends that Mr. Snuffer lacks standing to raise his claims based on the Computer Crime and Abuse Act (Count II) and the Telephone Harassment Statute (Count III), both criminal statutes. It asserts that the Computer Crime and Abuse Act provides for civil relief only after there has been a criminal conviction. Because there has been no criminal conviction, Great Lakes states, Count II must be dismissed. Great Lakes next cites case law finding that the Telephone Harassment Statute does not provide a civil right of action where debtors seek to recover for improper or harassing debt collection practices.

The case law is clear as to Count III, in which Mr. Snuffer alleges violation of the Telephone Harassment Statute. West Virginia Code § 61-8-16 makes it unlawful for anyone to "make or cause the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number." W. Va. Code § 61-8-16(a)(3). However, the WVCCPA contains a nearly-identical provision, making it a violation to "cause[] a telephone to ring or engag[e] any person in telephone conversation repeatedly or continuously…with intent to annoy, abuse, oppress or threaten any person at the called number." W. Va. Code § 46A-2-125(d).

This Court has explained that "[i]f the West Virginia legislature had intended for the criminal statute in section 61–8–16 to cover improper collection techniques by creditors, there would have been no reason for it to enact this portion of the CCPA." *Parkins-White v. World's Foremost Bank*, No. CIV.A. 2:10-CV-00137, 2010 WL 1404384, at *4 (S.D.W. Va. Mar. 31, 2010) (Goodwin, J.). Furthermore, the Court found it clear that the WVCCPA, and not the Telephone Harassment Statute, was "intended…to provide a civil cause of action for a debtor to sue a creditor for harassment." *Id.* Thus, there was no evidence to suggest that the West Virginia legislature intended to create a private right of action for plaintiffs in the position of Parkins-White. *Id*. at 3 (referencing Syl. Pt. 1, *Hurley v. Allied Chemical Corp.*, 262 S.E.2d 757, 758 (W.Va. 1980) for the test used to determine whether a state statute implies a private cause of action).

As in *Parkins-White*, the WVCCPA provides relief for the specific conduct alleged in Count III. The Court finds no implied private right of action in § 61-8-16 for debtors alleging harassment by creditors. Therefore, the Defendant's motion to dismiss Count III of Mr. Snuffer's complaint must be granted.

9

There is no case law directly on point as to Count II. The West Virginia legislature created a private cause of action within the Computer Crime and Abuse Act. It provides for compensatory and punitive damages, as well as other relief as appropriate, for those "injured by reason of a violation of any provision of this article." W. Va. Code § 61-3C-16(a). No statutory language specifies that the civil remedy provided for in § 61-3C-16 is available only after a conviction pursuant to the criminal provisions.

The statute further provides that "[a] civil action under this section must be commenced before the earlier of: (1) Five years after the last act in the course of conduct constituting a violation of this article; or (2) two years after the plaintiff discovers or reasonably should have discovered the last act in the course of conduct constituting a violation of this article." *Id.* § 61-3C-16(d). If the legislature had intended to tie the civil cause of action to a criminal conviction, it would logically have also tied the statute of limitations to a criminal conviction. As written, if the Defendant's reasoning were correct, a potential plaintiff who learned of the conduct as it happened would be deprived of a cause of action if a criminal case concluded more than five years after the violations.

In addition, the Supreme Court has addressed the precise argument put forth by the Defendant in the context of the civil cause of action contained in the Racketeer Influenced and Corrupt Organizations Act (RICO). *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 488-93 (1985). There, the Court of Appeals had found, as Great Lakes argues, that the term "violation" refers to a criminal conviction when contained in a criminal statute. *Id.* at 488. The Supreme Court held that "the term 'violation' does not imply a criminal conviction. It refers only to a failure to adhere to legal requirements." *Id.* at 489 (internal citations omitted.) The Court went on to address

10

policy considerations, finding that "[p]rivate attorney general provisions…are in part designed to fill prosecutorial gaps." *Id.* at 493.

The Court can find no language within § 61-3C-16 that would support the Defendant's reading. Nor can the Court concur in the Defendant's statement that "there can only be an *alleged* violation, not a violation, without a criminal conviction." (Def.'s Mem. in Supp. of Mot. to Dismiss at 17.) Accordingly, the Defendant's motion to dismiss must be denied as to Count II.

*C. Sufficiency of the Pleadings*

Finally, Great Lakes contends that Counts I, IV, and V must be dismissed for failure to satisfy basic pleading requirements, with the possible exception of Mr. Snuffer's allegation that Great Lakes violated W.Va. Code § 46A-2-128(e).[2] Great Lakes states that Mr. Snuffer "merely references general headings" of the four WVCCPA sections he asserts it violated, without specifying "how he claims each section was violated." (Def.'s Mem. in Supp. of Mot. to Dismiss at 12.) Great Lakes references cases discussing the type of conduct that may form the basis for an intentional infliction of emotional distress (IIED) claim. It argues that "Mr. Snuffer does not allege any facts that could constitute the type of conduct that 'truly offends community notions of acceptable conduct,' as he would have to establish to prevail." (*Id.* at 15.) Great Lakes next contends that Count V, alleging common law invasion of privacy, must also be dismissed for failure to state a claim. It points out that "Mr. Snuffer does not allege that Great Lakes contacted or disclosed anything to anyone, much less than that Great Lakes disclosed private facts in a highly offensive and objectionable manner." (*Id.* at 17.)

---

2 Section 46A-2-128(e) is the provision in the WVCCPA that bars direct contact with a debtor represented by counsel.

11

As detailed in Section II, Rule 8 of the Federal Rules of Civil Procedure[3] requires that a complaint contain facts sufficient to put the Defendant on notice as to the allegations being made, but does not require detailed factual allegations. *E.g.*, *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Courts evaluate motions to dismiss based on allegedly insufficient pleadings by determining whether, taking all factual allegations as true and construing all plausible inferences in favor of the Plaintiff, the Plaintiff has stated a claim upon which relief could be granted.

As to Count I, the Court finds that the Plaintiff has met the standards required by Rule 8 to allege violations of the WVCCPA. In addition to the allegation that Great Lakes called him regarding his student debt after he had provided it with his attorney's contact information, Mr. Snuffer alleges that Great Lakes used threats or coercion in violation of West Virginia Code § 46A-2-124; engaged in unreasonable or oppressive or abusive conduct in attempting to collect the debt in violation of § 46A-2-125; called repeatedly, continuously, at unusual times or at inconvenient times, in violation of § 46A-2-125(d); and used unfair or unconscionable means to collect a debt in violation of § 46A-2-128. Great Lakes discounts these allegations because they track the statutory language. However, the WVCCPA is a detailed statute that describes factual scenarios constituting a violation of each provision. An allegation that Great Lakes used threats of coercion in its attempts to collect a debt is not converted from a factual allegation to a legal allegation simply because the statute uses the same words.

Mr. Snuffer's complaint does not contain extensive detail describing each alleged violation. Such detail is not required. It does contain allegations setting forth the parties' relationship, the conduct constituting violations of the WVCCPA, and the alleged harm and damages. *See, e.g.*, *Bailey v. Chase Bank USA, N.A.*, No. 3:10-0316, 2010 WL 4867963, at *5-6

---

3 Rule 8 of the West Virginia Rules of Civil Procedure sets forth the same pleading standard.

(S.D.W. Va. Nov. 22, 2010) (Chambers, J.) (denying a motion for a more definitive statement where the complaint contained allegations similar to those in the instant case). Taking the factual allegations as true—for instance, that Great Lakes attempted to collect a debt by threats or coercion—Mr. Snuffer has stated a claim for relief under the WVCCPA.

As to Count IV, alleging IIED, the Court finds that Mr. Snuffer has adequately alleged facts that, taken as true, state a claim for relief. The West Virginia Supreme Court has established the following elements for IIED claims:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998) (reaffirmed in *Hatfield v. Health Mgmt. Associates of W. Virginia*, 672 S.E.2d 395, 404 (W. Va. 2008).

Mr. Snuffer alleges that, after informing Great Lakes that he was unable to pay due to a total and permanent disability, Great Lakes continued to call him with respect to his student loan debt. He alleges that it called him repeatedly, continuously, and/or at unusual and inconvenient hours, that the phone calls included threats or coercion, and that Great Lakes' intention was to harass or annoy him. He alleges that he suffered emotional distress as a result, as well as being "annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise [] caused indignation and distress." (Compl. at ¶ 29.) Those allegations, together with plausible inferences in the Plaintiff's favor, suffice to state an IIED cause of action. Accordingly, Count IV survives the Defendant's motion to dismiss.

13

In Count V, the Plaintiff alleges common law invasion of privacy, specifying that "[t]he acts of the Defendant in placing telephone calls to Plaintiff's telephone number invaded, damaged and harmed Plaintiff's right to privacy." (Compl. at ¶ 32.) The West Virginia Supreme Court has established the following categories of invasion of privacy: "(1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." Syl. Pt. 8, *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 74 (W. Va. 1983); Syl. Pt. 6, *Tabata v. Charleston Area Med. Ctr., Inc.*, 759 S.E.2d 459, 461 (W. Va. 2014). The allegations here involve an unreasonable intrusion upon Mr. Snuffer's seclusion.

Courts in West Virginia have generally adopted the Restatement (Second) of Torts § 652B for claims of intrusion upon seclusion. *See, e.g.*, *Ghafourifar v. Cmty. Trust Bank, Inc.*, No. 3:14-CV-01501, 2014 WL 4809782, at *14 (S.D.W. Va. Aug. 27, 2014) (Eifert, M.J.) *report and recommendation adopted*, No. 3:14-CV-01501, 2014 WL 4809794 (S.D.W. Va. Sept. 26, 2014); *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 508 (S.D.W. Va. 2014) (Faber, J.); *Harbolt v. Steel of W. Virginia, Inc.*, 640 F. Supp. 2d 803, 817 (S.D.W. Va. 2009) (Chambers, J.). The Restatement provides: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977).

Mr. Snuffer alleges that Great Lakes' telephone calls invaded his "expectation of privacy to be free from harassing and annoying telephone calls." (Compl. at ¶¶ 31-32.) Plaintiffs have found it difficult in similar cases to produce evidence of an *intentional* intrusion on seclusion at the

14

summary judgment stage. *See, e.g.*, *Bourne*, 998 F. Supp. 2d at 508; *Ferrell v. Santander Consumer USA, Inc.*, 859 F. Supp. 2d 812, 819 (S.D.W. Va. 2012) (Copenhaver, J.). However, at this stage, the Court considers only whether the Plaintiff has alleged a plausible cause of action. Comment b(5) of the § 652B of the Restatement suggests that harassing phone calls can support an invasion of privacy claim based on intrusion on seclusion.[4]

Accordingly, accepting all facts in the complaint as true, the Plaintiff has stated a cause of action for invasion of privacy under West Virginia law. The Defendant's motion to dismiss must be denied as to Count V.

### *CONCLUSION*

WHEREFORE, following careful consideration and for the reasons stated herein, the Court **ORDERS** that *Defendant Great Lakes Educational Loan Services, Inc.'s Motion to Dismiss* (Document 8) be **DENIED** as to Counts I, II, IV, and V, and **GRANTED** as to Count III. The Court further **ORDERS** that Count III be **DISMISSED without prejudice**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 19, 2015

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

[4] That example provides in full:
> A, a professional photographer, seeking to promote his business, telephones B, a lady of social prominence, every day for a month, insisting that she come to his studio and be photographed. The calls are made at meal times, late at night and at other inconvenient times, and A ignores B's requests to desist. A has invaded B's privacy.

15